FILED
CLERK, U.S. DISTRICT COURT

NOV - 3 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, CENTRAL DIVISION

| | |
|---|---|
| TORO-AIRE, INC., a California corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation; and DOES 1-100, inclusive,<br><br>              Defendants. | CASE NO. CV08-5784 SVW (JTLx)<br><br>[PROPOSED] FINAL JUDGMENT<br><br>[F.R.Civ.P. 58 and L.R. 58]<br><br><br>Honorable Stephen V. Wilson<br>Complaint filed:  July 18, 2008 |

       Plaintiff Toro-Aire, Inc.'s ("Toro-Aire") Complaint against Defendant Federal Insurance Company ("Federal") contained causes of action for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.

       Based on this Court's Orders Granting Federal's Motion for Partial Summary Judgment on Toro-Aire's Breach of Contract Cause of Action (attached hereto as Exhibit A) and Federal's Motion for Partial Summary Judgment on Toro-Aire's Breach of the Implied Covenant of Good Faith and Fair Dealing Cause of Action

Case 2:08-cv-05784-SVW-JTL   Document 61-1   Filed 10/28/10   Page 2 of 2   Page ID
#:3357
Case 2:08-cv-05784-SVW-JTL   Document 63   Filed 11/03/10   Page 2 of 32   Page ID #:3387

1 | (attached hereto as Exhibit B), which together resolved all of the causes of action in

2 | Toro-Aire's Complaint:

3 |     IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Judgment is

4 | entered in favor of Federal and against Toro-Aire, and that Toro-Aire is to take

5 | nothing by its Complaint against Federal.

6 |     IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Toro-Aire's

7 | Complaint against Federal is dismissed in its entirety, with prejudice.

8 |

9 | Dated: ___11/2/10___

10 |

11 |            The Honorable Stephen V. Wilson

12 |            Judge, United State District Court

13 | Submitted by:         TRESSLER LLP
                   Mary E. McPherson (SBN 177194)

14 |                    mmcpherson@tresslerllp.com
                   Adam C. Hackett (SBN 220679)

15 |                    ahackett@tresslerllp.com

16 |                    18100 Von Karman Avenue, Suite 800
                   Irvine, CA 92612

17 |                    Telephone:  (949) 336-1200
                   Facsimile:   (714) 752-0645

18 | OC#30433

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

[PROPOSED] FINAL JUDGMENT

**EXHIBIT A**

# EXHIBIT A

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 2 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document #:3359ed 11/03/10   Page 5 of 32   Page ID #:3390
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 1 of 24



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TORO-AIRE, INC., a California corporation, | CV 08-5784 SVW (JTLx) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [13] AND GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [17] |
| v. | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation; and DOES 1-100, inclusive, | |
| Defendants. | |

     The parties have brought cross-motions for summary judgment regarding the interpretation and application of a comprehensive general liability ("CGL") policy.

     For the reasons stated below, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 3 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document #:3360ed 11/03/10   Page 6 of 32   Page ID #:3391
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 2 of 24

## I.   FACTS[1]

Plaintiff Toro-Aire, Inc. brought this action to obtain indemnification from Defendant Federal Insurance Co. on a lawsuit that Plaintiff settled with the University of California Los Angeles ("UCLA" or "University").   The underlying lawsuit arose out of Plaintiff's installation of defective heating coils provided to the UCLA Westwood Replacement Hospital Project.

Plaintiff provided air-valve equipment and reheat coils for the Hospital.[2]   Delivery began in July 2002.   (Pl.'s SUF ¶ 3.)   Within a year of Plaintiff's delivery and installation of the equipment, the Hospital informed Plaintiff that the reheat coils were failing at a higher rate than normal and that they were leaking water.   (Pl.'s SUF ¶ 4.)   Plaintiff learned from the Hospital that testing of the equipment revealed a latent defect in the air valves.   (Pl.'s SUF ¶ 7.)   The Hospital informed Plaintiff that it would "seek further reimbursement as necessary for the cost of replacement coils, the reports, old coil removal, new coil reinstallation, pipe and duct testing, as well as any repairs to ceiling or existing installation, until the water system is leak free."   (Pl.'s SUF ¶ 8.)   The Hospital proceeded to remove the defective coils and install replacement coils.   The cost of replacing the heating coils was very high given that the walls had to be completely torn out, other piping and wiring impeded access to the

---

[1] The factual summary is presented solely for reference, and should not be construed as constituting the Court's rulings on the admissibility of relevant evidence.

[2] Plaintiff obtained the equipment from third-party vendors.   (See Pl.'s SUF ¶ 2.)

2

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 4 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document #:336   Filed 11/03/10   Page 7 of 32   Page ID #:3392
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 3 of 24

coils, and each individual coil had to be disconnected, drained, replaced, tested, and reinsulated. Following this process, the Hospital sought reimbursement from Plaintiff for these expenses as well as lost revenue from the delayed opening of the Hospital facilities. (Id. at ¶¶ 12, 14.)

Plaintiff tendered its claim for coverage to Defendant, which declined coverage. (Pl.'s SUF ¶¶ 23-26.) The University of California, as the owner and operator of the Hospital, filed suit on June 12, 2006, against Plaintiff seeking more than $2,500,000 in costs related to the removal and replacement of the coils provided by Plaintiff. (Id. at 27.) The complaint alleged claims for breach of contract, breach of warranty, negligence, and enforcement of a performance bond. In its contract and warranty claims against Plaintiff, the University alleged that Plaintiff delivered defective that failed to comply with the parties' contractual agreements, and that Plaintiff should be liable for the "direct and proximate result[s]" of this breach, including the costs of repair, correction, and replacement of the defective equipment, as well as delays to the completion and opening of the Hospital. (Ex. 2: Compl. ¶¶ 17, 20, 22, 25, 30, 31.) In the negligence claim, the University alleged that "[s]hortly after installation on the project the air vale equipment (specifically the reheat coils) began to leak and break. The leaking reheat coils caused damage to the property of the University." (Ex. 2: Compl. ¶ 34.)

On July 13, 2006, Defendant agreed to accept the defense of the lawsuit subject to a complete reservation of rights. Plaintiff required Defendant to provide Plaintiff with independent Cumis counsel

3

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 5 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document #:3362 Filed 11/03/10   Page 8 of 32   Page ID #:3393
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 4 of 24

in light of Defendant's reservation of rights. Plaintiff filed a demurrer to the University's complaint, in which Plaintiff stated that the University's negligence claim did not state a valid cause of action because "as admitted by the complaint, the product in question caused no damage to person or property." (Def.'s Ex. 8: Demurrer Mem. P+A at 2.) In its Opposition to Plaintiff's Demurrer, the University did not respond to Plaintiff's discussion of property damage. (Def.'s Ex. 9.) In its Minute Order granting Plaintiff's Demurrer with respect to the negligence cause of action, the state court held that the University:

> did not respond to Toro-Aire's Demurrer to its third cause of action for negligence. Toro-Aire correctly argues that this claim is barred by the economic loss rule which precludes a negligence cause of action where damages do not rise above the level of mere economic loss. Plaintiff does not allege physical injury to property. Rather, it only alleges the cost of replacing defective equipment and installing replacement equipment. The Demurrer to the third cause of action is sustained without leave to amend.

(Def.'s Ex. 10.)

The University then filed an amended complaint that omitted the negligence cause of action and restated the contract and warranty claims. These remaining claims asserted that the University incurred "costs related to the removal and replacement of the defective coils supplied by Toro-Aire," as well as "delay costs associated with the replacement of the defective . . . [v]alves." (Def.'s Ex. 3, ¶ 21.)

Following these pre-trial developments, Plaintiff and the University entered into settlement discussions. (Def.'s SUF ¶ 30.) In December 2007, the parties reached an agreement whereby Plaintiff paid

4

1  the University $896,000.  (Id. at 32.)

2      In this action, Plaintiff contends that because the heating coils

3  leaked water, they caused physical property damage, which is covered

4  under the standard CGL policy.  Thus, Plaintiff argues that the cost of

5  removing and replacing the heating coils was covered as a remedial

6  response to the physical damage that the leaking coils caused.

7      In response, Defendant raises several arguments, including that

8  the University's state court lawsuit, which eventually settled, was not

9  for the physical damage to the University's facilities as a result of

10 the water leakage, but simply for the replacement of the defective

11 coils.  Defendant argues that the defective coils alone are not covered

12 by the CGL policy, and that the cost of replacing them should be borne

13 by Plaintiff.

14

15 **II.  RELEVANT CONTRACTS**

16

17     **A.    Insurance Policy Coverage**

18     Plaintiff was insured under the General Liability part of an

19 insurance policy (the "Policy") underwritten by Defendant.  (Def.'s SUF

20 ¶¶ 30, 32.)   The Policy provided coverage for:

21     damages that the insured becomes legally obligated to pay by

22     reason of liability:

23          -imposed by law; or

24          -assumed in an insured contract;

25     for bodily injury or property damage[3] caused by an occurrence[4] to

26  _____

27 [3] The Policy defines "property damage" as:
        -Physical injury to tangible property, including resulting loss
28      of use of that property. . . .; or

5

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 7 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 62-35 #:3394 11/03/10   Page 10 of 32   Page ID #:3395
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 6 of 24

which this coverage applies.

(Id. at ¶ 35.)

### B.  Insurance Policy Exclusions

The Policy excludes liability assumed by the insured in a contract, unless the contract covers such legal liability that the insured would have in the absence of the contract.  (Id. at ¶ 38.)  In other words, the Policy covers the Settlement Agreement between Plaintiff and the University to the extent that the Settlement Agreement takes the place of legal liability that Plaintiff would have in the absence of the Settlement Agreement.

The Policy also excludes:

property damage to:

    -impaired property;[5] or

-----

    -Loss of use of tangible property that is not physically injured.
(Def.'s SUF, ¶ 36.)

[4] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Def.'s SUF, ¶ 37.)

[5] "Impaired Property," is defined as:
    [T]angible property, other than your product or your work, that cannot be used or is less useful because:
        -it incorporates your product or your work that is known or thought to be defective, deficient, inadequate or dangerous; or
        -you have failed to fulfill the terms or conditions of a contract or agreement;
    if such property can be restored to use by:
        -the repair, replacement, adjustment or removal of your product or your work; or
        -your fulfilling the terms or conditions of the contract or agreement.
(Id. at ¶ 41.)

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 8 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 62#:3385d 11/03/10   Page 11 of 32   Page ID #:3396
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 7 of 24

-property that has not been physically injured;

arising out of any:

-defect, deficiency, inadequacy or dangerous condition in your product or your work; or

-delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms and conditions.

(Id. at ¶ 40.)

This exclusion does not apply, however, to "the loss of use of other tangible property resulting from sudden and accidental physical injury to your product or your work after it has been put to its intended use." (Id.)

The Policy further excludes "property damage to your product[6] arising out of it or any part of it." (Id. at ¶ 42.)

## III. LEGAL STANDARDS

### A. Summary Judgment

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263

---

[6] "Your product" is defined as: "any . . . goods or products . . . manufactured, sold, handled, distributed or disposed of by . . . you," as well as "representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of your product." (Id. at 43.)

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 9 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 62   Filed 11/03/10   Page 12 of 32   Page ID #:3397
#:3366
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 8 of 24

1  (9th Cir. 1997).

2      The moving party bears the initial burden of establishing the

3  absence of a genuine issue of material fact.  See <u>Celotex Corp v.</u>

4  <u>Catrett</u>, 477 U.S. 317, 323-24 (1986).  When a party moves for summary

5  judgment under Rule 56(c), that party bears the burden of affirmatively

6  establishing all elements of its legal claim.  See <u>Southern Cal. Gas</u>

7  <u>Co. v. City of Santa Ana</u>, 336 F.3d 885 (9th Cir. 2003) (per curiam)

8  (adopting District Court order as its own).  See also <u>Fontenot v.</u>

9  <u>Upjohn Co.</u>, 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears

10  the burden of proof on an issue, either because he is the plaintiff or

11  as a defendant he is asserting an affirmative defense, he must

12  establish beyond peradventure <u>all</u> of the essential elements of the

13  claim or defense to warrant judgment in his favor.") (emphasis in

14  original).  On the other hand, if the moving party does not have an

15  affirmative burden of proving all the elements of its case, its burden

16  may be met by "'showing' -- that is, pointing out to the district court

17  -- that there is an absence of evidence to support the nonmoving

18  party's case."  <u>Celotex</u>, 477 U.S. at 325.

19      Once the moving party has met its initial burden, Rule 56(e)

20  requires the nonmoving party to go beyond the pleadings and identify

21  specific facts that show a genuine issue for trial.  See <u>id.</u> at 323-34;

22  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A scintilla

23  of evidence or evidence that is merely colorable or not significantly

24  probative does not present a genuine issue of material fact. <u>Addisu v.</u>

25  <u>Fred Meyer</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  Only genuine disputes

26  "where the evidence is such that a reasonable jury could return a

27  verdict for the nonmoving party" over facts that might affect the

28

Case 2:08-cv-05784-SVW-JTL  Document 61-2  Filed 10/28/10  Page 10 of 28  Page ID #:3567
Case 2:08-cv-05784-SVW-JTL  Document 62-3  Filed 11/03/10  Page 13 of 32  Page ID #:3398
Case 2:08-cv-05784-SVW-JTL  Document 34  Filed 10/01/2009  Page 9 of 24

1  outcome of the suit under the governing law will properly preclude the

2  entry of summary judgment.  See Anderson, 477 U.S. at 248; see also

3  Aprin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir.

4  2001) (the nonmoving party must identify specific evidence from which a

5  reasonable jury could return a verdict in its favor).

6  **B.    Insurance Contract Interpretation**

7      Under California law, basic principles of contract interpretation

8  apply when interpreting an insurance contract.  Unambiguous plain

9  meaning controls.  Ambiguous terms, on the other hand, "are resolved in

10  the insureds' favor, consistent with the insureds' reasonable

11  expectations."  Kazi v. State Farm Fire & Cas. Co., 24 Cal. 4th 871,

12  879 (2001) (citation omitted).  "An insurance contract is ambiguous if

13  the court finds that the language is susceptible to different

14  interpretations."  Tzung v. State Farm Fire and Cas. Co., 873 F.2d

15  1338, 1340 (9th Cir. 1989) (citing State Farm Mut. Auto Ins. Co. v.

16  Elkins, 52 Cal. App. 3d 534, 538 (1975)).  However, "[a]mbiguity cannot

17  be based on a strained instead of reasonable interpretation of a

18  policy's terms."  Highlands Ins. Co. v. Universal Underwriters Ins.

19  Co., 92 Cal. App. 3d 171, 175 (1979) (citations omitted).

20  **C.    Burden-Shifting in Insurance Litigation**

21      When construing the terms of an insurance policy, "[i]t is the

22  burden of the insured 'to bring the claim within the basic scope of

23  coverage,' and the burden of [the insurer] to prove exclusions to the

24  coverage."  Golden Eagle Ins. Corp. v. Cen-Fed, Ltd., 148 Cal. App. 4th

25  976, 984 (2007) (citing Waller v. Truck Ins. Exchange, Inc., 11 Cal.

26  4th 1, 16 (1995)).

27      Notably, the present case involves a duty to indemnify, not a duty

28

1 to defend. The duty to indemnify is narrower than the duty to defend.

2 See Certain Underwriters at Lloyd's of London v. Superior Court, 24

3 Cal. 4th 945, 958 (2001). In a dispute involving an insurer's broad

4 duty to defend, the insured may succeed by showing that any claim

5 against the insured potentially falls within the scope of the insurance

6 policy. In contrast, in a dispute over the insurer's duty to

7 indemnify, the insured must show that the claim actually comes within

8 the scope of the insurance policy. Palmer v. Truck Ins. Exchange,

9 Inc., 21 Cal. 4th 1109, 1120 (1999) (citing Collin v. American Empire

10 Ins. Co., 21 Cal. App. 4th 787, 803 (1994)). As is often said, "there

11 can be no indemnity without liability." Western Steamship Lines, Inc.

12 v. San Pedro Peninsula Hospital, 8 Cal. 4th 100, 114 (1994) (internal

13 quotations and citations omitted).

14 In determining whether an underlying cause of action falls within

15 the scope of an insurance policy such that the insurer owes a duty to

16 defend, the courts must examine "not . . . only the pleaded words but

17 the potential liability created by the suit." Gray v. Zurich Ins. Co.,

18 65 Cal. 2d 263, 276 (1966). The courts are not limited by the specific

19 causes of action pleaded, instead must look at the insured's liability

20 "under the facts alleged, reasonably inferable, or otherwise known."

21 Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (2005). On the

22 other hand,

23 These principles, articulated in the duty to defend context, can

24 be extended to apply to the duty to indemnify context. The court must

25 examine whether the underlying claims, as they existed at the time of

26 the entry of judgment (or settlement of the claims), actually gave rise

27 to the insured's liability. Ultimately, in determining whether an

28

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 12 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 62  Filed 11/03/10   Page 15 of 32   Page ID #:3400
#:3369
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 11 of 24

1  insurer must indemnify an insured with respect to settled claims, the

2  fundamental question is "whether the factual record and claims at the

3  time of the Seagate settlement demonstrates coverage." Atmel Corp. v.

4  St. Paul Fire & Marine Ins. Co., 430 F. Supp. 2d 989, 995 (N.D. Cal.

5  2006).

6      Thus, in determining Policy coverage, the Court must determine

7  whether the facts underlying Plaintiff's liability in the underlying

8  state court action involved damage that was covered by the policy.

9  Plaintiff bears the burden of making sufficient showings on these

10  grounds.

11      In determining Policy exclusions, the Court must determine whether

12  the facts underlying Plaintiff's liability claims in the underlying

13  state court action involved damage that was specifically excluded from

14  coverage under the Policy.  Defendant bears the burden of making

15  sufficient showing on these grounds.[7]

16

17  **IV.  ANALYSIS**

18

19      **A.    Policy Coverage**

20      Plaintiff bears the burden of establishing that the Policy covers

21  the payments Plaintiff made to the University.   To satisfy this burden,

22

23  ────────────────

24  [7] The parties did not raise and address the applicability of the
    burden-shifting framework applied in other cases arising out of
25  settled claims.  See, e.g., Isaacson v. California Ins. Guar. Ass'n,
    44 Cal. 3d 775, 791-92 (1988).  The Court will refrain from
26  addressing these unraised legal arguments.
        In any event, the Court believes that the approach adopted in
27  Atmel Corp. v. St. Paul Fire & Marine Ins. Co., 430 F. Supp. 2d 989
    (N.D. Cal. 2006), is the proper approach for the present procedural
28  posture.

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 13 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 62-3 #:3370 Filed 11/03/10   Page 16 of 32   Page ID.#:3401
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 12 of 24

Plaintiff must establish that the relevant payments 1) resulted from
"an occurrence" within the definition of the Policy, and 2) resulted
from "property damage" caused by such an occurrence or occurrences.

### 1. Occurrence

In order to determine whether the policy covers the conduct at
issue here, it first must be determined whether there was an
"occurrence" within the meaning of the policy. The policy defines
"occurrence" as "an accident, including continuous or repeated exposure
to substantially the same general harmful conditions." The California
Supreme Court has recently defined the term "accident" in a liability
insurance contract as "'an unexpected, unforeseen, or undesigned
happening or consequence from either a known or an unknown cause.'"
Delgado v. Interinsurance Exchange of Automobile Club of Southern
California, 97 Cal. Rptr. 3d 298, 302 (Cal. 2009) (quoting Geddes &
Smith, Inc. v. St. Paul Mercury Indemnity Co., 51 Cal. 2d 558, 563-564
(1959)) (citing Hogan v. Midland National Ins. Co., 3 Cal.3d 553, 559
(1970)). The Delgado court specified that the "unexpected, unforeseen,
or undesigned" nature of the injury is determined by viewing the event
from the insured party's perspective, rather than that of the injured
party's perspective. As applied to the present case, Delgado requires
this Court to determine whether or not Toro-Aire expected, foresaw, or
designed to cause the injury alleged by the University.

The Delgado Court further clarified that "an injury-producing
event is not an 'accident' within the policy's coverage language when
all of the acts, the manner in which they were done, and the objective
accomplished occurred as intended by the actor." Id. at 304. In
Merced Mutual Ins. Co. v. Mendez, 213 Cal. App. 3d 41 (1989), the Court

Case 2:08-cv-05784-SVW-JTL  Document 61-2  Filed 10/28/10  Page 14 of 28  Page ID
Case 2:08-cv-05784-SVW-JTL  Document 62-37  Filed 11/03/10  Page 17 of 32  Page ID #:3402
Case 2:08-cv-05784-SVW-JTL  Document 34  Filed 10/01/2009  Page 13 of 24

of Appeal provides an oft-cited illustration of this principle: when an
insured car driver intentionally drives fast intentionally crashes into
another car, the resulting lawsuit against the driver does not arise
from an "accident" because the driver intended the natural consequences
of his or her actions.  On the other hand, when a car driver
intentionally drives fast but unintentionally crashes into another car,
the car wreck is an "accident" under a CGL policy because the insured
driver did not intend, foresee, or expect to cause the accident.  <u>Id.</u>
at 50.

It is important to remember also that "accidents need not crash or
clatter; they need only be unexpected consequences."  <u>Anthem
Electronics, Inc. v. Pacific Employers Ins. Co.</u>, 302 F.3d 1049, 1055
(9th Cir. 2002).  In the present case, common sense dictates the
conclusion that Plaintiff did not intend, foresee, or expect to install
defective heating coils into the Hospital.  <u>Cf. Chu v. Canadian Indem.
Co.</u>, 224 Cal. App. 3d 86, 97-99 (1990).  Though Plaintiff does not
offer much evidence or argument on this issue, it has satisfied its
burden of establishing that "the defect in the coils was the result of
a manufacturing defect."  (Pl.'s Opp. at 13.)  Since the coils were
manufactured by a third party, Plaintiff cannot be deemed to have
intended, foreseen, or expected these coils to fail.  Defendant fails
to identify any factual evidence to refute this conclusion.[8]

---

[8] Defendant attempts to challenge this conclusion on the ground that
coverage for an "accident" can only exist where the underlying cause
of action sounds in tort rather than contract.  This contract/tort
distinction has been abolished.  <u>See Vandenberg v. Superior Court</u>,
21 Cal.4th 815, 840-41 (1999).  Indeed, in deciding that a particular
contractual breach did not involve an accident, the court in <u>Golden
Eagle Ins. Corp. v. Cen-Fed, Ltd.</u>, 148 Cal. App. 4th 976, 989 (2007),
specifically noted that it was deciding a case involving a "non-
accidental act of breach of contract."  This phrasing implicitly

Case 2:08-cv-05784-SVW-JTL  Document 61-2  Filed 10/28/10  Page 15 of 28  Page ID
Case 2:08-cv-05784-SVW-JTL  Document 62-337Filed 11/03/10  Page 18 of 32  Page ID.#:3403
Case 2:08-cv-05784-SVW-JTL  Document 34  Filed 10/01/2009  Page 14 of 24

### 2.  Property Damage

Plaintiff also bears the burden of establishing that the "occurrence" caused "property damage."  The Policy defines "property damage" as "physical injury to tangible property" or "loss of use of tangible property that is not physically injured."  The dispute at issue in this Motion is whether the claim that the University brought against Plaintiff fell into either of these categories.  If not, then then the policy would not cover the costs of replacing the reheat coils because it is well-established that damage limited solely to the insured's own product or work does not constitute "property damage" within the meaning of a standard CGL policy.  See, e.g., St. Paul Fire & Marine Inc. Co. v. Coss, 80 Cal. App. 3d 888, 892-93 (1978); Hamilton Die Cast, Inc. v. United States F. & G. Co., 508 F.2d 417, 419-20 (7th Cir. 1975).

### a.  Physical Injury to Tangible Property

The basic definition of "physical injury to tangible property" has been nicely summarized by the California Court of Appeal:

> [S]tandard CGL policies such as those in this case define "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." Courts applying standard CGL policy language generally agree that the incorporation of a defective component or product into a larger structure or system does not constitute physical injury to tangible property, unless and until the defective component

acknowledges the possibility of an accidental breach of contract. Such an accidental breach satisfies the CGL definition of "occurrence."

14

Case 2:08-cv-05784-SVW- ITL   Document 61-2   Filed 10/28/10   Page 16 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 6# 3378ed 11/03/10   Page 19 of 32   Page ID #:3404
Case 2:08-cv-05784-SvW-JTL   Document 34   Filed 10/01/2009   Page 15 of 24

<u>physically injures some other tangible part of the larger system</u>

<u>or the system as a whole</u>.  In other words, the mere presence of a

defective part causing no immediate harm does not produce physical

injury.

<u>Watts Industries, Inc. v. Zurich American Ins. Co.</u>, 121 Cal. App. 4th

1029, 1044 (2004) (quoting <u>F & H Const. v. ITT Hartford Ins. Co. of</u>

<u>Midwest</u>, 118 Cal. App. 4th 364, 372 (2004) (emphasis added)).[9]

This rule applies even if some physical damage is required in

order to remedy the defective component after it is installed.  In <u>New</u>

<u>Hampshire Ins. Co. v. Vieira</u>, 930 F.2d 696 (9th Cir. 1991), the Ninth

Circuit interpreted California law involving the installation of

defective equipment.  The insurance company sought reimbursement from a

---

[9] The <u>Watts</u> case is helpful mainly in its concise and accurate summary
of the current state of the law in this area.
   The facts of <u>Watts</u> are only helpful in establishing an unusual
and limited "public health and safety" exception to the general rule
preventing coverage for the incorporation of faulty components into a
larger product.  <u>Watts</u> involved a manufacturer that had provided
lead-tainted piping for use in municipal water systems.  <u>Id.</u> at 1035-
37.  The municipalities sued the manufacturer for the harm caused to
their property (water).  <u>Id.</u> at 1041.  The court held that the
insurer was obligated to defend the manufacturer in these suits even
though the likely remedy was that the manufacturer would have to
disassemble and reinstall its water systems.  This disassembly and
reinstallation was not merely prophylactic; it prevented ongoing
harms to the property.  <u>Id.</u> at 1042.  Most notably, the court cited a
pair of California cases that effectively established a narrow public
health rule finding "immediate harm and physical injury to other
property at the moment the incorporation [of the defective component]
occurred."  <u>Id.</u> at 1044-45.
   These cases all involved unusual circumstances, such as the
incorporation of asbestos into buildings, see <u>Armstrong World Inds.,</u>
<u>Inc. v. Aetna Cas. & Surety Co.</u>, 45 Cal. App. 4th 1 (1996), and the
incorporation of wood splinters into breakfast cereal, see <u>Shade</u>
<u>Foods, Inc. v. Innovative Products Sales & Marketing, Inc.</u>, 78 Cal.
App. 4th 847, 865-66 (2000).  These cases should not be extended far
beyond their unusual facts.  <u>See</u> Walter Croskey, Rex Heeseman,
Thomas W. Johnson, Jr., <u>Insurance Litigation</u>, § 7:1427 (2008 supp.)

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 17 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 61-2 Filed 11/03/10   Page 20 of 32   Page ID #:3405
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 16 of 24

1   subcontractor for payments related to the repair of the subcontractor's

2   faulty drywall installation.   Though the repairs involved the

3   installation of additional drywall, which required holes to be cut in

4   the roofs of the buildings, the court held that economic losses such as

5   diminished value or costs of replacement did not constitute "property

6   damage" under the CGL.   Id. at 701-02.   Notably, the costs of

7   replacement involved the physical alteration of physical property (the

8   roofs) other than the defective component itself.

9       Similarly, in Golden Eagle Ins. v. Travelers Cos., 103 F.3d 750

10  (9th Cir. 1996), overruled on other grounds by Government Employees,

11  Inc. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998), the court determined

12  that a subcontractor's defective materials and poor workmanship did not

13  constitute "property damage" within the meaning of the standard CGL.

14  The insurer was not required to defend the insured subcontractor where

15  the subcontractor's defective concrete-pouring had caused the floors to

16  sink.   Id. at 757.   The court held that this was true even though the

17  repair plans required that the "floor coverings would have to be

18  removed and replaced in order to repair the concrete floors."   Id.

19  Since costs of repair and diminution of value are two sides of the same

20  coin -- economic loss -- it is irrelevant that the repairs require the

21  alteration of physical property.   As the Ninth Circuit stated in both

22  cases, "the nature of the repairs cannot create coverage where none

23  exists."   103 F.3d at 757 (citing Vieira, 930 F.2d at 701).

24      There are various old cases to the contrary.   See, e.g., St. Paul

25  Fire & Marine Ins. Co. v. Sears, Roebuck & Co., 603 F.2d 780 (9th Cir.

26  1979); Geddes & Smith, Inc. v. Saint Paul-Mercury Indemnity Co., 51

27  Cal. 2d 558 (1959), and after remand at 63 Cal. 2d 602 (1965); cf.

28

16

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 18 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 62:3376 Filed 11/03/10   Page 21 of 32   Page ID #:3406
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 17 of 24

1  <u>Bundy Tubing Co. v. Royal Indemnity Co.</u>, 298 F.2d 151 (6th Cir. 1962).

2  However, given that those cases interpret an old formulation of the CGL

3  policy,[10] the rule applied in <u>Vieira</u> and <u>Golden Eagle</u> is the applicable

4  standard.[11]

5       There are many counter-examples illustrating the type of <u>covered</u>

6  property damage contemplated by the <u>Watts</u> court.  For example, in

7  _____

8  [10] As the <u>Insurance Litigation</u> treatise notes, these cases were
   "decided under a pre-1973 CGL policy form that did not require
9  'physical injury to tangible property' and therefore may not be
   dispositive in interpreting the 'physical injury' requirement in more
10  recent forms."  Walter Croskey, Rex Heeseman, Thomas W. Johnson, Jr.,
   <u>Insurance Litigation</u>, § 7:2309 (2008 supp.).
11       Though <u>St. Paul Fire & Marine Ins Co. v. Sears, Roebuck & Co.</u>,
12  603 F.2d 780 (9th Cir. 1979), was decided under the old formulation
   of the CGL property clause, it arguably could satisfy the modern CGL
13  clause.  The case involved a summary judgment motion over the
   insurer's duty to defend an insured party who had installed a
14  defective urethane foam on the roofs of certain houses.  <u>Id.</u> at 781-
   82.  A complaint was filed against the insured alleging that removal
15  of the defective foam caused damage to the underlying surface of the
   roof: the removal and repair caused water damage from leaking roofs,
16  debris was scattered around the property and not removed, and
   urethane was applied to personal property and landscaping where it
17  did not belong.  <u>Id.</u> at 785-86.  Furthermore, in the summary judgment
   action, "the uncontested statements" of the insured's expert
18  established that "the removal of the defectively installed roofing
   material will cause some damage to the existing roof structure."  <u>Id.</u>
19  at 786.
        Even if there is a colorable argument that the modern CGL covers
20  this property damage, it does not appear that <u>Sears</u> has survived
   <u>Vieira</u> and <u>Golden Eagle</u>.  <u>Vieira</u> distinguished the facts of <u>Sears</u> and
21  questioned the continuing applicability of <u>Sears</u>, 930 F.2d at 698-99
   & n.3, 701; <u>Golden Eagle</u> did not even mention <u>Sears</u>.
22       To the extent the <u>Sears</u> holding remains good law, the case is
   distinguishable from the present dispute because the repair and
23  reinstallation of the defective urethane in <u>Sears</u> caused actual
   damage to property other than the defective urethane itself.  The
24  <u>Sears</u> court did not hold that the mere act of tearing out and
   reinstalling the urethane constituted property damage under the CGL.
25
   [11] Plaintiff cites to authorities from other jurisdictions, but those
26  cases are not determinative of California law.  The Court will not
   address these cases because there is adequate on-point authority
27  construing California law.

28

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 19 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 62-3376 Filed 11/03/10   Page 22 of 32   Page ID #:3407
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 18 of 24

<u>Maryland Cas. Co. v. Reeder</u>, 221 Cal. App. 3d 961 (1990), condominium buyers had sued the developers and builders of a condominium project on account of soil subsidence that caused damage to the condominium units. <u>Id.</u> at 965-66. The buyers' complaints alleged that the units suffered damage to their walls, floors, foundations, ceilings, patios, and walkways, and that rain water seeped into the units.[12]  <u>Id.</u>  The developers and builders sued their insurance company, asserting that the insurer owed a duty to defend the insured under the standard CGL "property damage" clause. The court determined that the condominium buyers' complaints had sufficiently alleged that their buildings and personal property had suffered physical injury as a result of the builders' and developers' mistakes, thus entitling the developers and builders to be defended by their insurer. <u>Id.</u> at 969-70. Notably, the claims had alleged property damage that occurred separate from the requested repair and replacement of the defective buildings. <u>See id.</u> at 970-71.

The conclusion from these cases is that Plaintiff is entitled to indemnity if it can establish the four links in the following chain of facts: (1) there was leakage of water or some other fluid at the University's Hospital; (2) Plaintiff's equipment leaked this fluid; (3) this leakage from Plaintiff's equipment caused physical damage to the Hospital property, and (4) some of the University's repair and reinstallation work was aimed at repairing this damaged property. If these requirements are satisfied, the reinstallation work would be considered "physical injury to tangible property" under the Policy.

_____

[12] Unlike in the present case, the allegations were relevant because the case involved the insurer's duty to defend, not the duty to indemnify.

Case 2:08-cv-05784-SVW-JTL Document 61-2 Filed 10/28/10 Page 20 of 28 Page ID
Case 2:08-cv-05784-SVW-JTL Document 62:3377ed 11/03/10 Page 23 of 32 Page ID #:3408
Case 2:08-cv-05784-S.W-JTL Document 34 Filed 10/01/2009 Page 19 of 24

1     In the present procedural posture, Plaintiff bears two separate

2 burdens. In order to defeat Defendant's Motion, Plaintiff must

3 introduce sufficient admissible evidence to raise a genuine issue as to

4 whether or not the three above-mentioned sets of facts are true. In

5 order to succeed on its own Motion, Plaintiff must introduce sufficient

6 admissible evidence to establish the three above-mentioned sets of

7 facts are true, such that no reasonable jury could find for Defendant.

8     The evidence before the Court does not meet either of these

9 burdens. Plaintiff successfully introduces evidence suggesting that

10 there was some water leakage at the Hospital.[13] However, Plaintiff

11 fails to provide any admissible evidence regarding whether: (1) this

12 water leakage was caused by Plaintiff's installation of defective

13 equipment; (2) this water leakage caused actual property damage to the

14 Hospital; or (3) the University's repair and reinstallation work sought

15 to repair this water-damaged property.[14]

16

---

17 [13] (See Pl.'s Ex. 5 (business record showing that water had leaked
during construction of Hospital); Pl.'s Ex. 6 (same); Pl.'s Ex. 10,

18 at 3 (adoptive admission by Defendant that there was leakage
resulting from installation of heating coils); Ex. 13, at 2 (same).

19 See Fed. R. Evid. 801(d)(2); Fed. R. Evid. 803(6).

20     Though Plaintiff fails to meet the technical requirements of
admissibility for the business records (for example, by failing to

21 lay a foundation as to whether these records are kept in the ordinary
course of business), such technical defects are easily remedied at

22 trial and do not affect the substantive contents of the asserted
facts. The Court is more interested in examining whether the factual

23 content of these records is admissible or inadmissible hearsay. The
technical failure to provide evidence in an admissible <u>form</u> is less

24 important than a substantive failure to provide evidence that
contains admissible <u>contents</u>. See <u>Fraser v. Goodale</u>, 342 F.3d 1032,

25 1036-37 (9th Cir. 2003). <u>But cf. Canada v. Blain's Helicopters,
Inc.</u>, 831 F.2d 920, 925 (9th Cir. 1987).

26

27 [14] Plaintiff seeks to introduce an April 23, 2003 letter from the
Hospital project's mechanical contractor sent to the project's lead

28 contractor. (See Declaration of David McIntyre in Support of

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 21 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 62-3   Filed 11/03/10   Page 24 of 32   Page ID #:3409
                                          #:3378
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 20 of 24

1    In short, Plaintiff has introduced a mere "scintilla of evidence"

2    in support of its claim, and this scintilla of evidence does not even

3    establish all of the necessary facts upon which its legal claim is

4    grounded.  See Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir.

5    2000).  Plaintiff's facts do not address the ultimate issue of whether

6    the injuries at issue are covered under the Policy's "physical injury

7    to tangible property" clause.  As such, Plaintiff has failed to raise a

8    genuine issue of material fact sufficient to defeat Defendant's motion

9    for summary judgment, and Defendant is entitled to summary judgment on

10   this question.

11

12

13

14

15   Plaintiff's Partial Summary Judgment ["McIntyre Decl."], ¶ 11(c);
     Pl.'s Ex. 3.)  The letter includes a statement that "[t]he costs
16   associated with drywall repair, painting and flooring damage caused
     by coils that break under water pressure after room finishes is
17   undeterminable." (Pl.'s Ex. 3.)
         This evidence does not satisfy Plaintiff's burden for two
18   reasons.  First, this letter does not include any facts establishing
     that coil-failure actually caused any damage to drywall, painting, or
19   flooring.  The letter simply mentions in passing that such damage may
     or may not have occurred, and that any costs potentially associated
20   with such damage are speculative.
         Second, and most importantly, this evidence is inadmissible
21   hearsay to which no exception applies.  The Court will not consider
     this evidence, as "[o]nly admissible evidence may be considered by
22   the trial court in ruling on a motion for summary judgment."  Beyene
     v. Coleman Sec. Services, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988);
23   see also Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).
     It is true that Plaintiff, in opposing Defendant's motion, "need not
24   produce evidence in a form that would be admissible at trial."
     Curnow By and Through Curnow v. Ridgecrest Police, 952 F.2d 321, 323
25   -324 (9th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317,
     324 (1986)).  However, the factual contents of this evidence must be
26   admissible at trial.  See Fraser v. Goodale, 342 F.3d 1032, 1036-37
     (9th Cir. 2003).  Inadmissible hearsay is always inadmissible when
27   introduced to prove the truth of what is asserted, regardless of the
     form in which it is introduced.
28

Case 2:08-cv-05784-SVW-ITL  Document 61-2  Filed 10/28/10  Page 22 of 28  Page ID
Case 2:08-cv-05784-SVW-JTL  Document 62-3 Filed 11/03/10  Page 25 of 32  Page ID #:3410
#:3379
Case 2:08-cv-05784-S v W-JTL  Document 34  Filed 10/01/2009  Page 21 of 24

1      **b.**   **Loss of use of tangible property that is not**

2         **physically injured**

3    Plaintiff also seeks coverage for property damage under the clause

4 covering "loss of use of tangible property that is not physically

5 injured." Since this clause is a coverage clause, Plaintiff bears the

6 burden of showing that the clause actually applies to the settled state

7 court action. Plaintiff asserts that "the need to remove and replace

8 the coils delayed the opening of the hospital," and that "the

9 University claimed to have suffered [damages] resulting from [these]

10 delays." (Pl.'s Mot. at 21). In its Opposition to Defendant's Motion,

11 Plaintiff reiterates that "the University incurred delays in opening

12 its hospital as a result of the time it took to repair the coils."

13 (Pl.'s Opp. at 21.)

14    On the question of "loss of use," it is helpful to examine a case

15 where the clearly was no such loss of use. In F & H Const. v. ITT

16 Hartford Ins. Co. of Midwest, 118 Cal. App. 4th 364, 372 (2004), a

17 subcontractor provided defective products (pile cap extensions) to the

18 contractor, who then incorporated the defective products part of a

19 larger construction project. Id. at 368. Once the defects were

20 discovered, the contractor modified its design so as to avoid the

21 larger expense of removing and replacing the completed portions of the

22 project. Id. at 368-69. Ultimately, the project suffered no delay and

23 the completed structure met all of its specifications. Id. at 369.

24 The contractor sued the subcontractor for damages arising from the

25 costs of modification and the loss of an early-completion bonus which

26 the contractor would have recovered but for the defective equipment.

27 Id. at 377. In addition to holding that there was no "physical injury

28

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 23 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 62-3380d 11/03/10   Page 26 of 32   Page ID #:3411
Case 2:08-cv-05784-SvW-JTL   Document 34   Filed 10/01/2009   Page 22 of 24

1  to tangible property," the court also held that there was no "loss of

2  use of tangible property" because the project was not delayed in any

3  way.  Id. at 377.

4      As a corollary to the F & H Construction holding, it appears that

5  a litigant may succeed on a "loss of use" claim if a construction

6  project is delayed and the proprietor suffers economic losses as a

7  result of this delay.  See Stein-Brief Group, Inc. v. Home Indem. Co.,

8  65 Cal. App. 4th 364, 371 (1998) (dictum).

9      Despite this legal rule, in the present case Plaintiff has not met

10  its burden of introducing evidence showing that the University suffered

11  economic harm from loss of use due to a delayed Hospital opening.

12  Plaintiff's declaration about this fact is a classic example of

13  hearsay.  (See McIntyre Decl., ¶ 5.)  It is well-established that

14  "hearsay evidence in Rule 56 affidavits is entitled to no weight" when

15  deciding summary judgment.  Scosche Inds., Inc. v. Visor Gear Inc., 121

16  F.3d 675, 681 (9th Cir. 1997).[15]

17      The only remaining argument regarding the delay in the Hospital's

18  opening is the University's complaints against Plaintiff in the

19  underlying state court action.  (See Pl.'s Exs. 1, 14.)  The complaints

20  themselves are inadmissible hearsay to which no exception applies.

21  Further, even if the complaints were admissible evidence, the

22  University's statements in the complaints are nothing more than

23

24  [15] As discussed supra, a court should not exclude evidence from summary
25  judgment because it is contained in an inadmissible form — for
    example, a declaration or affidavit would not be admissible if the
26  case proceeded to trial, and would have to be replicated by the live
    testimony of the declarant.  However, the court must consider the
27  admissibility of the statement's contents, as hearsay evidence is
    never admissible to prove the truth of what is asserted.  See Fraser
28  v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

22

Case 2:08-cv-05784-SVW-JTL  Document 61-2  Filed 10/28/10  Page 24 of 28  Page ID
Case 2:08-cv-05784-SVW-JTL  Document 62  Filed 11/03/10  Page 27 of 32  Page ID #:341-2
#:338
Case 2:08-cv-05784-SVW-JTL  Document 34  Filed 10/01/2009  Page 23 of 24

1  allegations.  Such allegations do not constitute factual support

2  showing that the Hospital's opening was actually delayed and the

3  University actually suffered economic loss.  Cf. Atmel Corp. v. St.

4  Paul Fire & Marine Ins. Co., 430 F. Supp. 2d 989, 992, 994-95 (N.D.

5  Cal. 2006) (discussing settlement of state court action in case where

6  insured party had introduced evidence in federal court regarding

7  factual basis of settled state court claims).

8      In short, Plaintiff has failed to establish the factual basis for

9  its claim that the damage at issue constituted "loss of use" under the

10  Policy.  Accordingly, Plaintiff has failed to raise a genuine issue of

11  material fact sufficient to defeat Defendant's motion for summary

12  judgment, and Defendant is entitled to summary judgment on this

13  question.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20

21

22

23

24

25

26

27

28

23

Case 2:08-cv-05784-SVW-JTL   Document 61-2   Filed 10/28/10   Page 25 of 28   Page ID
Case 2:08-cv-05784-SVW-JTL   Document 62   Filed 11/03/10   Page 28 of 32   Page ID #:3413
Case 2:08-cv-05784-SVW-JTL   Document 34   Filed 10/01/2009   Page 24 of 24

**B.    Policy Exclusions**

Having determined that the claims at issue are not covered by the Policy, the Court need not examine the parties' arguments regarding the applicability of the Policy's exclusions.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion and DENIES Plaintiff's Motion.

IT IS SO ORDERED.

DATED:   October 1, 2009

_____
STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

///
///
///

24

**EXHIBIT B**

# EXHIBIT B

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TORO-AIRE, INC., | ) | CV 08-5784 SVW (JTLx) |
| Plaintiff, | ) | |
| v. | ) | ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY |
| FEDERAL INSURANCE COMPANY, | ) | JUDGMENT [50] |
| Defendant. | ) | [JS-6] |

On June 12, 2006, the University of California, Los Angeles ("UCLA") sued Plaintiff Toro-Aire, Inc. ("Toro-Aire") for the costs of ripping out and re-installing defective coils and air valves that Toro-Aire had supplied for a hospital building. Defendant Federal Insurance Company ("Federal") defended Toro-Aire in that lawsuit under a full reservation of rights and also permitted Toro-Aire to hire independent counsel. Throughout this process, Federal denied any duty to indemnify Toro-Aire under the insurance policy. UCLA and Toro-Aire subsequently settled, and this Court was left to decide whether any or all of the settlement was covered by the policy. On October 1, 2009, this Court issued an Order Granting Federal's Motion for Partial Summary Judgment

1   on Toro-Aire's breach of contract claim. [Docket no. 34]. Federal now

2   moves for partial summary judgment on the remaining claim for alleged

3   breach of the covenant of good faith and fair dealing ("the Motion").

4        Interestingly, the parties agree that the Motion should be

5   granted. Both agree that under Waller v. Truck Insurance Exchange, 11

6   Cal.4th. 1, 36 (1995), there can be no finding of bad faith without an

7   actual breach of contract. Because the Court has already ruled that

8   there was no such breach, there can be no bad faith. As confirmed in

9   Toro-Aire's brief, "There is no dispute that the District Court's Order

10  on the motion for summary judgment of the breach of contraction action

11  will necessarily adjudicate the entire action including the cause of

12  action for breach of the implied covenant of good faith and fair

13  dealing." (Plaintiff's Response at 2). On that ground, the Court GRANTS

14  Federal's motion for partial summary judgment as to the claim for

15  breach of the covenant of good faith and fair dealing.[1]

16

17

18       IT IS SO ORDERED.

19

20

21  DATED:  October 5, 2010

22                                    STEPHEN V. WILSON

23                                    UNITED STATES DISTRICT JUDGE

24  _____

25  [1] Federal requests that the Court also base its judgment on "the
    independent ground that even if Federal had breached its insurance
26  contract, which Federal denies, Federal's actions were reasonable and
    did not constitute 'conscious and deliberate acts' that amounted to
27  bad faith." (Federal Reply at 2). Having an adequate and undisputed
    basis for granting partial summary judgment on independent grounds,
28  the Court declines to consider this additional argument.